CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
DEC 12 2008
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Criminal Action No. 5:07CR00048 |
| v. | ) **MEMORANDUM OPINION** |
| ALBERT C. TAYLOR, | ) By: Hon. Glen E. Conrad |
| | ) United States District Judge |
| Defendant. | ) |

In this criminal case, the government has filed a motion in limine seeking permission to introduce statements made by an unindicted co-conspirator. The court held a hearing on the government's motion on December 8, 2008. For the reasons that follow, the government's motion will be granted in part and denied in part.

## Background

The defendant, Albert C. Taylor, is charged with various federal crimes arising out of the investigation of a cockfighting operation in Page County, Virginia known as Little Boxwood. The charges include conspiring to sponsor and exhibit an animal in an animal fighting venture, and to conduct an illegal gambling business (Count One); sponsoring an animal in an animal fighting venture (Count Two); conducting an illegal gambling business (Count Three); and conspiring to engage in money laundering (Count Four).

According to the government, the charged conspiracy involved an unindicted Page County law enforcement official ("unindicted co-conspirator"), whose role in the conspiracy was to "look the other way," to refrain from enforcing applicable laws, and to warn members of the cockfighting operation of any possible law enforcement interference.

The government contends that, in order to infiltrate Little Boxwood, a special agent with the United States Department of Agriculture was introduced as a Puerto Rican cockfighter who ran a cockfighting operation in New York. The undercover agent told the owner and operator of Little Boxwood (Luis Martinez and Dale Moreland, respectively) that he was considering purchasing Little Boxwood, but that he was concerned about interference by local law enforcement. In order to allay the undercover agent's fears, Moreland elicited the defendant's assistance. The government contends that the defendant was a longtime cockfighter at Little Boxwood and other local cockpits, and a confidant and political supporter of the unindicted co-conspirator.

On April 4, 2007, Moreland arranged for the undercover agent to meet with the defendant at Little Boxwood. The government contends that, during the meeting, the undercover agent was repeatedly assured that the unindicted co-conspirator knew about the cockfighting that took place at Little Boxwood and other cockpits, and that he had promised not to interfere unless he was somehow forced to do so. The government contends that when the undercover agent offered to pay the unindicted co-conspirator to persuade him to continue his non-interference policy, the defendant offered to make a donation to the unindicted co-conspirator to prevent the money from appearing to be a bribe. The government further contends that, as a result of the conversation, the undercover agent gave the defendant $500 to be paid to the unindicted co-conspirator. The defendant subsequently paid the money to the unindicted co-conspirator, and it was deposited into a political campaign checking account associated with the unindicted co-conspirator. On May 5, 2008, the undercover agent allegedly gave the defendant another $500 to be paid to the unindicted co-conspirator.

## Discussion

In its motion in limine, the government seeks permission to introduce statements made by the unindicted co-conspirator between 2003 and 2007, in which the co-conspirator expressed his intent to refrain from investigating cockfighting in Page County. The government also seeks permission to introduce statements made by the unindicted co-conspirator to federal and state law enforcement agents in April and May of 2007, both before and immediately after a federal raid on Little Boxwood, in which he indicated that he knew nothing about the cockfighting activities at Little Boxwood or cockfighting, in general.

To support the motion in limine, the government first contends that the statements are admissible under Rule 801(d)(2)(E) of the Federal Rules of Evidence. Rule 801(d)(2)(E) provides that a statement is not hearsay[1] if the statement was made by a co-conspirator "during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). Accordingly, a court may admit evidence under this rule if it concludes, by a preponderance of the evidence, "(1) that there was a conspiracy involving the declarant and the party against whom admission of the evidence is sought and (2) that the statements at issue were made during the course of and in furtherance of that conspiracy." United States v. Blevins, 960 F.2d 1252, 1255 (4th Cir. 1992). The party seeking to introduce the statements "must show the existence of the conspiracy and the declarant's role in the conspiracy through independent evidence but may supplement that evidence with the statements of the declarant." United States v. Afridi, 241 F. App'x 81, 84 (4th

---

[1] The Federal Rules of Evidence define "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Under Rule 802, hearsay is not admissible except as provided by the Federal Rules of Evidence or by other rules prescribed by the Supreme Court. Fed. R. Evid. 802.

3

Cir. 2007); see also Fed. R. Evid. 801(d)(2) ("The contents of the statement shall be considered but are not alone sufficient to establish . . . the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E).").

The government also contends that certain statements are admissible as statements of the unindicted co-conspirator's then existing state of mind under Rule 803(3) of the Federal Rules of Evidence. Under Rule 803(3), "statement[s] of the declarant's then existing state of mind, emotion, sensation, or physical condition" are not excluded by the hearsay rule, even if the declarant is available as a witness. Fed. R. Evid. 803(3). Examples of such statements include statements of the declarant's "intent, plan, motive, [or] design." Id.; see also United States v. Smallwood, 299 F. Supp. 2d 578, 584 (E.D. Va. 2004) ("Rule 803(3) makes explicit that statements of a declarant's intent or plan come within the exception to the hearsay rule for statements of then existing state of mind.").

Of course, the mere fact that a statement is not hearsay or that it is not excluded by the hearsay rule does not mean that it is automatically admissible. The evidence must also pass muster under the relevance standard set forth in Rule 402 of the Federal Rules of Evidence and Rule 403's requirement that its probative value not be substantially outweighed by other concerns, such as the danger of unfair prejudice, confusion of the issues, or misleading the jury.

With these principles in mind, the court makes the following preliminary rulings with

4

Cir. 2007); see also Fed. R. Evid. 801(d)(2) ("The contents of the statement shall be considered but are not alone sufficient to establish . . . the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E).").

The government also contends that certain statements are admissible as statements of the unindicted co-conspirator's then existing state of mind under Rule 803(3) of the Federal Rules of Evidence. Under Rule 803(3), "statement[s] of the declarant's then existing state of mind, emotion, sensation, or physical condition" are not excluded by the hearsay rule, even if the declarant is available as a witness. Fed. R. Evid. 803(3). Examples of such statements include statements of the declarant's "intent, plan, motive, [or] design." Id.; see also United States v. Smallwood, 299 F. Supp. 2d 578, 584 (E.D. Va. 2004) ("Rule 803(3) makes explicit that statements of a declarant's intent or plan come within the exception to the hearsay rule for statements of then existing state of mind.").

Of course, the mere fact that a statement is not hearsay or that it is not excluded by the hearsay rule does not mean that it is automatically admissible. The evidence must also pass muster under the relevance standard set forth in Rule 402 of the Federal Rules of Evidence and Rule 403's requirement that its probative value not be substantially outweighed by other concerns, such as the danger of unfair prejudice, confusion of the issues, or misleading the jury.

With these principles in mind, the court makes the following preliminary rulings with

4

respect to the government's motion.[2] First, as the court explained during the hearing on the government's motion, the government is generally entitled to offer testimony that sheds light on the relationship between the defendant and the unindicted co-conspirator, and the unindicted co-conspirator's stance on cockfighting, since such testimony provides an evidentiary backdrop for the defendant's April 4, 2007 meeting with the undercover agent and the charges against the defendant. Consequently, the court intends to permit the government to introduce statements made by the unindicted co-conspirator regarding his knowledge of cockfighting in Page County and his intent to refrain from investigating cockfighting, as statements of the unindicted co-conspirator's intent or plan under Rule 803(3), and/or as co-conspirator statements under Rule 801(d)(2)(E), provided that the government makes the requisite showing for admission under this rule. However, in light of the concerns outlined in Rule 403, the government will only permit the government to introduce such statements that were contemporaneous with the acts charged in the indictment, and the court will deny the government's motion with respect to statements that were remote in time from the charged offenses.

Additionally, the court is presently inclined to permit the government to introduce statements made by the unindicted co-conspirator to federal and state law enforcement agents in April and May of 2007, in which the unindicted co-conspirator indicated that he knew nothing about the cockfighting activities at Little Boxwood or cockfighting in general. The court finds that such statements, including those that were allegedly made immediately after Little Boxwood

---

[2] The court notes that preliminary rulings on the admissibility of evidence, which are often made in response to motions in limine, "are advisory and can be modified at trial once all circumstances are revealed." United States v. Shelburne, 2008 U.S. Dist. LEXIS 12942, at *4 (W.D. Va. Feb. 21, 2008).

5

was raided by federal agents, are likely admissible under Rule 801(d)(2)(E), provided that the government makes the requisite showing for admission under this rule. See, e.g., United States v. Stokes, 64 F. App'x 352, 357 (4th Cir. 2003) (noting, in its discussion of Rule 801(d)(2)(E), that "[t]he Supreme Court recently explained that conspiracy law does not contain any . . . automatic termination rule," and that "acts of concealment of the conspiracy often constitute a continuation of the scheme"); see also United States v. Shores, 33 F.3d 438, 442 n.3 (4th Cir. 1994) (noting that "[t]he conspiracy which supports the admission of the co-conspirator's statement need not be charged in the indictment").

Accordingly, for the reasons stated, the government's motion in limine will be granted in part and denied in part. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 12th day of December, 2008.

_____
United States District Judge

6